## In Re Anonymous No. 69 D.B. 81

Disciplinary Board Docket no. 69 D.B. 81

To the Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

McDONNELL, *Member,* July 6, 1982—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, The Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendation to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

On December 1, 1981, a petition for discipline was filed by the Office of Disciplinary Counsel. The petition charged respondent with violating three counts of the Disciplinary Rules of the Code of Responsibility, as follows:

1. D.R. 1-102(A)(4)—dealing with conduct involving deceit and misrepresentation.

2. D.R. 6-101(A)(3)—dealing with the neglect of a legal matter entrusted to a lawyer.

3. D.R. 9-102(B)(4)—dealing with the failure to deliver to a client properties in the possession of the lawyer which the client is entitled to receive.

No answer to the petition was filed within the prescribed time. The matter was referred to hearing committee [ ]. A hearing was held on February 5, 1982, and the committee filed its report on February 25, 1982. No objections were filed within the prescribed time.

## II. FINDINGS OF FACT

The following findings of fact have been stipulated to by both parties:

1. Petitioner, whose principal office is located at 100 Pine Street, Harrisburg, Pa., is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania, and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

2. Respondent, [ ] Esq., was born in 1944, admitted to practice law in the Commonwealth of Pennsylvania in 1971, and his office is located at [ ].

3. In or about December 1975, [A] had surgery performed on her hand by Dr. [B] at Mercy Hospital in Johnstown, Pa. As a result of the operation, [A] allegedly sustained injuries to her hand and nervous system.

4. In or about February 1977, [A] and her husband, [C], retained respondent to represent them in a tort claim for negligence, based upon alleged medical malpractice.

5. It was not until April 2, 1979, that respondent filed a notice of complaint with the Arbitration

Panels for Health Care in Harrisburg, Pa., on behalf of [A and C] against [Dr. B].

6. On April 27, 1979, a rule to file a complaint was issued pursuant to praecipe of [Dr. B] and on June 14, 1979, respondent filed a complaint.

7. On or about June 29, 1979, [Dr. B] filed and served interrogatories, addressed to [A and C], which were to be answered within 30 days.

8. On October 23, 1979, by order of the Arbitration Panels for Health Care, the malpractice action was transferred to the [   ] County Court of Common Pleas after neither party had responded to a Rule to Show Cause (why the action should not be transferred), issued October 10, 1979.

9. This change of forums was reported in a newspaper article in the [   ], edition of the (Johnstown, Pa.) Tribune Democrat.

(a) [A] first became aware of the same from reading that article.

(b) Shortly thereafter, she contacted respondent about this transfer and he informed [A] that he would "start work" to have the case "heard" in [   ] County, or words to similar effect.

10. On November 28, 1979, a motion for sanctions was filed on behalf of [Dr. B] wherein it was alleged that, despite requests by [Dr. B] on August 22, 1979, and September 14, 1979, the interrogatories of June 26, 1979, had not been answered.

11. By order of court, dated November 27, 1979, Judge [D] of the [   ] County Court of Common Pleas issued a rule to show cause why the interrogatories should not be fully answered by [A and C]. Subsequently, on February 5, 1980, a judgment of non pros was entered against [A and C] and in favor of [Dr. B], because of the " . . . failure of the plaintiff to respond to said Rule or answer the Interrogatories."

8

12. [A] telephoned respondent on April 16, 1980, from Florida (where [A and C] had moved in January, 1980).

(a) She was advised by respondent during the telephone conversation that the latter was "working" on the case, or words to similar effect.

(b) At no time during this conversation did respondent inform [A] or [C] of the non pros judgment which had been entered against them more than two months previously.

13. On May 19, 1980, [A and C] again called respondent, but he was not available to speak to them.

14. In July, 1980, [A and C] travelled to the [   ] County Courthouse, where they learned of the judgment of non pros which had been entered against them.

(a) [A and C] then proceeded to [   ] to visit respondent and were instructed by respondent to return to his office a week later to obtain the interrogatories of June 29, 1979.

(b) [A and C] returned to respondent's office thereafter, picked up and took the interrogatories to Florida, where they answered them and timely returned them to respondent, pursuant to respondent's instructions.

(c) At no time during any of the above-related visits did respondent inform [C] or [A] of the meaning and effect of the non pros judgment.

(d) To the contrary, on each occasion, respondent informed [A and C] that, by answering the interrogatories he had given them, the non pros judgment "would be taken care of", or words to similar effect.

15. Subsequently, [A and C] made various in-

quiries of respondent regarding the malpractice action.

(a) On December 5, 1980, [A and C] called respondent and were informed by him that the " . . . case would be heard in January, 1981" or words to similar effect.

(b) Again, on February 10, 1981, [A and C] telephoned respondent's office, but respondent was not available and failed to return the call as requested.

(c) On February 13, 1981, [A and C] again called respondent's office but, despite leaving a message for respondent to return the call, failed to hear from him.

(d) On March 13, 1981, [A and C] again called respondent and were informed that he would return their call, but he failed to do so.

16. In or about April, 1981, [A and C] again came to [  ] to personally meet with respondent regarding the malpractice action. During an appointment at or about such time, respondent:

(a) Failed to show [A] the contents of her file in regard to the matter;

(b) Failed to provide her with any pertinent facts as to the status of the case; and

(c) Assured her and her husband that their case would "come up in June or July, 1981", or words to similar effect.

17. By letter dated June 3, 1981, [A and C] requested a status report from respondent regarding the malpractice action.

18. When respondent failed to answer the June 3, 1981 letter, [C] sent a letter to respondent dated July 2, 1981, wherein respondent was informed that he was discharged and a return of the file was demanded.

19. Subsequently, in or about early August, 1981, [A] received her file.

20. In addition to the foregoing, respondent stipulated that he received timely notice of the filing of the following documents:

(a) Interrogatories addressed to [A and C] are filed of record of June 29, 1979.

(b) Order of Arbitration Panels for Health Care, dated October 23, 1979, transferring the action to the [ ] County Court of Common Pleas.

(c) Motion for sanctions filed on behalf of Doctor [B] on November 28, 1979.

(d) The Order of Judge [D] of the [ ] County Court of Common Pleas, dated November 27, 1979, whereby a Rule to Show Cause why the interrogatories should not be answered was issued.

(e) Praecipe for judgment of non-pros filed on behalf of Doctor [B] on February 5, 1980.

(f) Notice of Entry of Judgment from the [ ] County Prothonotary subsequent to February 5, 1980, the date judgment was entered.

## III. DISCUSSION

After hearing all of the evidence, the hearing committee determined that respondent's conduct was in violation of D.R. 1-102 (A)(4) and D.R. 6-101 (A)(3). The committee found no violation of D.R. 9-102 (B)(4). The reason for this latter conclusion was that the evidence showed that the clients' file was eventually returned to them. The board agrees with the committee's findings, based upon the evidence in the record. The hearing committee recommended that respondent be given a public censure and five years probation. With this recommendation the board does not agree.

This case involves the neglect of one client's legal

matter, as well as the attempted cover-up by respondent of that neglect. There is no evidence here of respondent neglecting other clients' matters that he is handling.

Because respondent has received a prior informal admonition, the board agrees that a public censure should now be imposed. The imposition of a five-year probation period is unwarranted. The cases in which probation has been imposed in the past have been where there have been violations of the Disciplinary Code caused by either physical or mental incapacity on the part of the respondent. In this case there is no indication of any such incapacity and, in fact, in this case there is no pattern of consistent neglect in other matters being handled by respondent. Since this appears to be an isolated case, the board is of the opinion that public censure is the proper discipline. See In Re: Anonymous 5 D. & C. 3d 26 (1978) and In Re: Anonymous 4 D. & C. 3d 616 (1978).

## IV. PRIOR DISCIPLINE

Respondent received an informal admonition on April 21, 1975.

## V. RECOMMENDATION

The board recommends that respondent, [   ], be publicly censured by the Supreme Court of Pennsylvania.

Mrs. Neuman and Mr. Krawitz dissent and would recommend a six month suspension.

## ORDER

O'BRIEN, *C.J.*, And now, August 31, 1982, upon consideration of the recommendation of the Disci-

plinary Board dated July 6, 1982, it is hereby ordered that [Respondent] be and he is suspended from the Bar of the Commonwealth for a period of four months, and he shall comply with all the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement.